**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Alejandro CARMONA, Defendant-Appellant.**

**No. 16-10409**

**Non-Argument Calendar**

United States Court of Appeals, Eleventh Circuit.

(April 18, 2017)

Michael John Brown, Nicholas Joseph Hartigan, Assistant U.S. Attorney, Michael V. Herskowitz, John Andrew Horn, Lawrence R. Sommerfeld, U.S. Attorney's Office, Atlanta, GA, for Plaintiff-Appellee

Steven Berne, Law Office of Steven Berne, Atlanta, GA, for Defendant-Appellant

Before HULL, WILSON, and ANDERSON, Circuit Judges.

PER CURIAM:

A jury convicted Alejandro Carmona of conspiracy to possess with intent to distribute methamphetamine, heroin, and cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(i), (b)(1)(A)(ii), and (b)(1)(A)(viii). He was subsequently sentenced to 240 months of incarceration, which was well below the applicable guidelines range. On appeal, Carmona raises three challenges to his conviction and sentence: (1) that the district court erred by instructing the jury on deliberate ignorance; (2) that his Sixth Amendment rights were violated when the court relied on drug quantities not reflected in the verdict to calculate his guideline range; and (3) that the district court erred by failing to make preliminary findings concerning the scope of his agreement or the reasonable foreseeability of his co-conspirators' con-

duct. We address each issue in turn and, for the reasons discussed below, affirm the conviction and sentence.

I.

Carmona first argues that the district court erred when, at the government's request, it instructed the jury on deliberate ignorance. He contends that giving the instruction was in error because it permitted the government to argue inconsistent theories, because the government had not presented evidence of deliberate ignorance, and because the instruction created a significant risk that the jury would substitute a lesser standard in place of the actual knowledge required for a conviction. We review the decision to give a deliberate ignorance instruction de novo. United States v. Stone, 9 F.3d 934, 937 (11th Cir. 1993). We will not reverse a conviction on the basis of the jury charge, however, unless "the issues of law were presented inaccurately ... or the charge improperly guided the jury in such a substantial way as to violate due process." United States v. Turner, 871 F.2d 1574, 1578 (11th Cir. 1989).

A deliberate ignorance instruction is "appropriate when the facts support the inference that the defendant was aware of a high probability of the existence of the fact in question and purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution." United States v. Garcia-Bercovich, 582 F.3d 1234, 1237 (11th Cir. 2009) (quoting United States v. Perez-Tosta, 36 F.3d 1552, 1564 (11th Cir. 1994)). This Court has held that "where 'the evidence supports both actual knowledge and deliberate ignorance, the instruction is properly given.'" United States v. Arias, 984 F.2d 1139, 1143 (11th Cir. 1993) (quoting United States v. Ochoa–Fabian, 935 F.2d 1139, 1142 (10th Cir. 1991)). District

courts should not, however, instruct the jury on deliberate ignorance when the evidence points only to actual knowledge. United States v. Steed, 548 F.3d 961, 977 (11th Cir. 2008).

Nevertheless, an erroneously given deliberate ignorance instruction is harmless if the jury was properly instructed that finding such deliberate ignorance required proof beyond a reasonable doubt, if the jury was also instructed on the theory of actual knowledge, and if there was sufficient evidence of actual knowledge to support that theory. See Stone, 9 F.3d at 937–41. Such an erroneous instruction is harmless because, if it is unsupported by the evidence, we can assume that jurors rejected that theory and convicted on the alternative ground—actual knowledge—for which there was an appropriate charge and sufficient evidence. Id. As such, we need not determine whether the instruction was appropriately given if we can readily determine that the verdict is supported by sufficient evidence of actual knowledge. Id.

As an initial matter, Carmona's argument that the instruction was improperly given because actual knowledge and deliberate ignorance are "contradictory" or "logically inconsistent" theories is without merit. This Court has routinely recognized that the instruction is proper when the evidence supports both charges. See Arias, 984 F.2d at 1143. Secondly, and more importantly, the jury here was instructed that to find Carmona guilty based on deliberate ignorance they must do so beyond a reasonable doubt. Thus, if—as Carmona urges this Court—the government only presented evidence of actual knowledge to the jury, we can presume that the jury followed the court's instruction and declined to convict based on deliberate ignorance. Stone, 9 F.3d at 938 ("Few tenets are more fundamental to our jury trial

system than the presumption that juries obey the court's instructions."). Therefore, even assuming that the instruction was in error, such error was harmless so long as the government presented sufficient evidence of actual knowledge. See id. at 937–40.

We have no trouble concluding that the evidence of Carmona's actual knowledge of the drug trafficking conspiracy was more than sufficient to support the jury's verdict. As just a brief overview, testimony showed that Carmona: controlled and directed the travel of buses used to transport the drugs; founded the companies that owned those buses; maintained—at his home—the business records for those companies; received $4000 per month in expenses and $500 per week in salary to run the companies; instructed members of the conspiracy not to touch the buses' batteries shortly before heroin was seized from the batteries of one of those buses; had repeated telephone conversations with members of the conspiracy as they rode from Mexico to Atlanta on buses carrying substantial quantities of drugs and no paying customers; repeatedly met with leaders of the drug trafficking conspiracy in Atlanta and received payments from the organization before his buses began traveling to Atlanta; and carried large amounts of cash out of the bus warehouse in suitcases. Accordingly, even if we assume that the government presented no evidence of deliberate ignorance, there were still adequate grounds on which the jury, having been properly instructed, could have convicted based on actual knowledge. Thus, any er-

ror in providing the instruction was harmless and this assignment of error is due to be rejected.

## II.

Carmona next argues that his Sixth Amendment rights were violated when the district court considered drug quantities not reflected in the jury's special verdict form to calculate his guideline range.[1] He maintains that the court erred by calculating his guideline range on the basis of drugs attributed to his co-conspirators, instead of sentencing him solely on the basis of drugs for which the jury found him culpable. Carmona contends that any fact that exposes a defendant to a longer sentence must be found by a jury and not a judge.

These arguments were not raised in the district court[2] and, as such, are subject only to plain error review on appeal. United States v. Duncan, 400 F.3d 1297, 1301 (11th Cir. 2005) (applying plain error review to a Sixth Amendment challenge and collecting cases). We have discretion to correct an error under the plain error standard where there was (1) error, (2) that was plain, (3) that affected substantial rights, and (4) that seriously affected the fairness, integrity, or public reputation of judicial proceedings. Id. Moreover, this Court may disregard the holding of a prior opinion only where that "holding is overruled by the Court sitting en banc or by the Supreme Court." United States v. Kaley, 579 F.3d 1246, 1255 (11th Cir. 2009).

---

1. Carmona titles his argument "the district court's sentence based on drug amounts rejected by the jury is substantively unreasonable and violates the Sixth Amendment and Due Process Clause of the Fifth Amendment." He does not develop any argument that the court violated his rights under the Fifth Amendment, however, and the topic will not

be addressed. See United States v. Carter, 776 F.3d 1309, 1327 (11th Cir. 2015).

2. Carmona asked the court not to hold him responsible for drug quantities beyond those indicated in the special verdict, but he did not assert, as he does now, that to do so would run afoul of the Sixth Amendment.

As this Court's "precedent uniformly states, '[r]elevant conduct of which a defendant was acquitted nonetheless may be taken into account in sentencing for the offense of conviction, as long as the government proves the acquitted conduct relied upon by a preponderance of the evidence' " and the sentence does not exceed that authorized by the jury verdict. Duncan, 400 F.3d at 1304 (quoting United States v. Barakat, 130 F.3d 1448, 1452 (11th Cir. 1997) (alteration in original)); see also United States v. Watts, 519 U.S. 148, 152–53, 117 S.Ct. 633, 635–36, 136 L.Ed.2d 554 (1997); United States v. Faust, 456 F.3d 1342, 1348 (11th Cir. 2006). Even if we were inclined to overrule this extensive precedent, we are not at liberty to do so here. Accordingly, the assignment of error is due to be rejected if the drug quantities on which the district court relied during sentencing were proven by a preponderance of the evidence and if the sentence does not exceed that authorized by the convicted conduct.

■ First, we discussed above, supra Issue I, some of the many grounds on which the district court could have readily connected Carmona to the quantities of drugs seized from his co-conspirators. Accordingly, we have no difficulty concluding that his participation in the activities leading to these seizures was proven by a preponderance of the evidence and that the court did not violate his Sixth Amendment rights by calculating the guideline range using drug quantities from those seizures. Secondly, the maximum sentence authorized by the jury for Carmona's conviction was life imprisonment. 21 U.S.C. § 841(b). Carmona was sentenced to 240 months of imprisonment and five years of supervised release, which clearly is within the maximum sentence authorized by the jury. Accordingly, because Carmona's participation in the drug trafficking organiza-

tion at the time of the seizures was proven by a preponderance of the evidence and because his sentence did not exceed the maximum sentence authorized by the jury this assignment of error is due to be rejected.

III.

Finally, Carmona argues that the court erred by failing to make preliminary findings concerning the scope of his agreement or the reasonable foreseeability of his co-conspirators' conduct. He contends that, during sentencing, the district court did not point to any evidence connecting him with his co-conspirators' plans to possess with intent to distribute the drugs for which he was held accountable. Because Carmona did not raise this argument before the district court, plain error review applies. See Duncan, 400 F.3d at 1301.

A member of a drug conspiracy is liable not only for his own acts, but also for the acts of others committed in furtherance of the conspiracy that are reasonably foreseeable in connection with the activity that the defendant agreed to undertake. United States v. Ismond, 993 F.2d 1498, 1499 (11th Cir. 1993). In drug conspiracy cases, the court must make individualized findings as to each defendant's scope of involvement and then determine the drug quantities reasonably foreseeable to that defendant given his level of participation. Id. If the court fails to make individualized findings, "the sentence may nevertheless be upheld if the record supports the amount of drugs attributed to the defendant." Id.

■ It is clear to us that the district court did not commit plain error in determining the quantities of drugs to attribute to Carmona at sentencing. The PSI held Carmona responsible for three specific seizures: (1) the January 4, 2014 seizure of 50.99 kilograms of methamphetamine; (2)

the January 24, 2014 seizure of 19.34 kilograms of heroin; and (3) the May 29, 2014 seizure of 22.86 kilograms of cocaine. Carmona objects to the consideration of the drug quantities seized on January 4 and January 24, 2014.[3]

During sentencing, the court credited testimony about Carmona's connection to and direction of the buses used to transport drugs and money, noting that it was corroborated by evidence at trial. The court found that the drug quantity calculation in the PSI was also supported by the trial testimony and actually grossly understated the drug quantities that Carmona was responsible for bringing into the United States. The court noted the number of trips the buses completed, with no passengers and no apparent purpose except to deliver narcotics into the United States and to deliver drug proceeds back to Mexico. Based upon testimony and the corroborating evidence, the court found "way beyond a preponderance of the evidence" that Carmona was responsible for the drug quantities as set forth in the PSI. The district court's factual findings were supported by the evidence presented at trial and undisputed facts within the PSI.

Even if the district court had not made these findings at sentencing, the record amply supports the connection between Carmona and all three seizures. Although surveillance did not directly link Carmona to the January 4 or January 24 seizures, the evidence discussed above, supra Issue I, clearly indicates that the quantities attributed to him were reasonably foreseeable given his role in the conspiracy at this time. Accordingly, the district court did not commit error, much less plain error, in

determining the quantity of drugs attributable to Carmona. His final challenge is, therefore, due to be rejected.

Upon review of the record and consideration of the parties' briefs, and having rejected each of the challenges properly presented on appeal, the judgment of the district court is

**AFFIRMED.**

---

**3.** On this issue, Carmona's primary argument is that "none of the Government's witnesses testified that [he] had any knowledge of the quantities of drugs for which he was not convicted." The drug quantity seized on May 29 was supported by the jury's special verdict form. As such, it is presumed that he does not object to the court's consideration of the 22.86 kilograms of cocaine seized on that date.