[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10590
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-00042-ODE-JFK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LINCOLN E. SON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(February 3, 2014)

Before TJOFLAT, MARCUS and JORDAN, Circuit Judges.

PER CURIAM:

Lincoln Son appeals his 200-month total sentence, imposed after he pleaded

guilty of conspiring to import at least 5 kilograms of cocaine into the United States,

in violation of 21 U.S.C. §§ 963, 960 (Count One); conspiring to possess with

intent to distribute at least 5 kilograms of cocaine, in violation of 21 U.S.C. § 846 (Count Two); and attempting to possess with intent to distribute at least 500 grams of cocaine, in violation of 21 U.S.C. § 841 (Count Three).  The charges arise from a drug-trafficking operation in which drugs were packed in suitcases boarded on commercial planes that arrived at the Hartsfield-Jackson Atlanta International Airport, at which point airline ramp workers removed the suitcases from the plane and smuggled them out of the airport.  Agents later arrested several ramp workers, including the head of the airport crew, who agreed to take part in a sting operation in which he intercepted and delivered four kilograms of cocaine to Son.  The sentencing court held Son responsible for "at least 50 kilograms of cocaine," applied a two-level enhancement pursuant to U.S.S.G. § 3B1.1(c), and sentenced Son to a below-guidelines sentence of 200 months' imprisonment.  On appeal, Son argues that: (1) the district court erred in applying the managerial-role enhancement; (2) the court erred in calculating the drug quantity; (3) his sentence is procedurally and substantively unreasonable; and (4) the court's drug quantity finding violated his Sixth Amendment rights under Apprendi v. New Jersey, 530 U.S. 466 (2000), and its progeny.  After careful review, we affirm.

We review a district court's application of an aggravating-role enhancement under U.S.S.G. § 3B1.1 for clear error.  United States v. Jiminez, 224 F.3d 1243, 1250-51 (11th Cir. 2000).  We will not reverse under clear error unless we are left

2

with "a definite and firm conviction that a mistake has been committed." United States v. Crawford, 407 F.3d 1174, 1177 (11th Cir. 2005) (quotation omitted). Further, a district court's choice between two permissible views of the evidence cannot be clear error. United States v. Saingerard, 621 F.3d 1341, 1343 (11th Cir. 2010). We also review the district court's determination of the drug quantity attributable to a defendant for clear error. United States v. Chavez, 584 F.3d 1354, 1367 (11th Cir. 2009). We will uphold a sentence if the record supports the amount of drugs attributed to the defendant, even if the district court's findings were inadequate. United States v. Ismond, 993 F.2d 1498, 1499 (11th Cir. 1993). We review the sentence a district court imposes for "reasonableness," which "merely asks whether the trial court abused its discretion." United States v. Pugh, 515 F.3d 1179, 1189 (11th Cir. 2008) (quoting Rita v. United States, 551 U.S. 338, 351 (2007)). Finally, we review a preserved constitutional challenge to a sentence de novo. United States v. Dean, 487 F.3d 840, 848 (11th Cir. 2007).

First, we are unpersuaded by Son's claim that the district court erred in applying the managerial-role enhancement. Section 3B1.1(c) of the Sentencing Guidelines provides for a two level increase "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity" that involved fewer than five participants or was not "otherwise extensive" within the meaning of § 3B1.1(a) and (b). A "participant" is a person who is criminally responsible for the

3

offense, even if not convicted.  U.S.S.G. § 3B1.1, comment. (n.1).  In determining if an individual is an organizer or leader, the court's considerations include: (1) the defendant's exercise of decision-making authority; (2) recruiting accomplices; (3) the claimed right to a larger share of the proceeds; (4) the degree of participation in planning or organizing the crime; and (5) the degree of control and authority exercised over others.  U.S.S.G. § 3B1.1, comment. (n.4).

A role enhancement requires that "the defendant exerted some control, influence[,] or decision-making authority over another participant in the criminal activity." United States v. Martinez, 584 F.3d 1022, 1026 (11th Cir. 2009). Evidence showing that the defendant exerted influence or control over one other participant will be sufficient to support an enhancement under § 3B1.1(c).  United States v. Lozano, 490 F.3d 1317, 1323 (11th Cir. 2007) (upholding enhancement for defendant who instructed at least one co-conspirator to engage in criminal conduct and was "intricately involved in the offense"); United States v. Mandhai, 375 F.3d 1243, 1248 (11th Cir. 2004) (upholding enhancement where the defendant recruited one individual into a terrorist plot, prompted that individual to purchase weapons, and briefed him on the bombing plan).

Facts contained in a presentence investigation report ("PSI") that are not objected to "with specificity and clarity" may be considered as admissions for sentencing purposes.  United States v. Beckles, 565 F.3d 832, 844 (11th Cir. 2009)

4

(quotation omitted).  If a defendant challenges the factual basis of his sentence, then the government must prove the disputed facts by a preponderance of the evidence with "reliable and specific evidence." United States v. Cataldo, 171 F.3d 1316, 1321 (11th Cir. 1999) (quotation omitted).

Here, the court properly applied the two-level managerial-role enhancement. There was no clear error in this determination.  For starters, Son exerted decision-making authority over the head of the airport crew.  As the record shows, during a recorded meeting between that individual and Son in February 2011, the individual asked about doing a "dummy" run, but Son rejected the idea without any indication that he needed to vet it with anyone else.  Second, Son recruited the ramp worker who later recruited the head of the airport crew.  Third, he helped plan or organize the operation by supplying co-conspirators with cell phones, informing them when bags would arrive, providing photographs of the bags to be removed, instructing them on where each bag was to be delivered, and overseeing payments to crew workers by providing the money to crew leader.

We also find no merit to Son's claim that the court erred in calculating the drug quantity.  The Guidelines direct a sentencing court to approximate drug quantity when there is no drug seizure or the amount seized does not reflect the scale of the offense.  U.S.S.G. § 2D1.1, comment. (n.5).  "Although sentencing may be based on fair, accurate, and conservative estimates of the quantity of drugs

5

attributable to a defendant, sentencing cannot be based on calculations of drug quantities that are merely speculative." United States v. Zapata, 139 F.3d 1355, 1359 (11th Cir. 1998).

A sentencing court may typically rely on hearsay so long as (1) the evidence has sufficient indicia of reliability, (2) the court makes explicit factual findings as to credibility, and (3) the defendant has an opportunity to rebut the evidence. See United States v. Anderton, 136 F.3d 747, 751 (11th Cir. 1998). Nonetheless, explicit findings are not required where the reliability of the hearsay statement is apparent from the record. United States v. Gordon, 231 F.3d 750, 761 (11th Cir. 2000). Thus, we have upheld sentencing findings based solely on hearsay testimony where the hearsay statements were materially consistent with one another and other evidence, and the defendant had ample opportunity to discredit the statements by calling the declarants as witnesses at sentencing. Id. at 760-61.

To begin with, the district court properly relied on the hearsay statements from the debriefings of the airport crew leader and two of the ramp workers. As for the first hearsay factor, each man's account of the operation, including the method by which the bags were identified, removed, and delivered was consistent. Additionally, their cell phone records demonstrated their communications on days that bags were ripped, and corroborated Son's various aliases. As for the second factor, the court explicitly found that the head of the airport crew was credible.

6

Although it did not do so for the other two ramp workers, the consistency of their statements sufficiently demonstrated their reliability. As for the last factor, Son had ample opportunity to discredit the statements by calling the men as witnesses.

Moreover, in light of the reliability of the co-conspirators' statements, the district court did not clearly err in finding that Son was involved with the distribution of at least 50 kilograms of cocaine during the drug-smuggling conspiracy. Son admitted to the first quantity the court included in its calculation, the four kilograms of cocaine seized on the day of his arrest. The next quantity, two kilograms, was supported by the airport crew leader's description of the first real load he smuggled, which he estimated weighed between one and three kilograms. He also said that the largest load he ever moved for Son was 30 kilograms, which supported the court's inclusion of that amount as a single load.

The also record demonstrated that Son was involved in the distribution of at least 14 additional kilograms of cocaine. The co-conspirator recruited by Son stated that he once shipped a 21- to 23- kilogram load for Son, and that Son told him the load actually weighed 15 kilograms. The statement, by itself, is sufficient to demonstrate the remaining amount. Moreover, the occurrence of shipments on October 23, November 6, and November 27 of 2010 was undisputed, and Son himself referred to 10 kilograms as a "light load" during a recorded conversation

7

with the head of the airport crew in April 2011. This evidence is more than sufficient to support the district court's finding under clear-error review.

Next, we reject Son's argument that his sentence is procedurally and substantively unreasonable. In reviewing sentences for reasonableness, we typically perform two steps. Pugh, 515 F.3d at 1190. First, we "'ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range.'" Id. (quoting Gall v. United States, 552 U.S. 38, 51 (2007)).[1]

If we conclude that the district court did not procedurally err, we consider the "'substantive reasonableness of the sentence imposed under an abuse-of-discretion standard,' " based on the "'totality of the circumstances.'" Id. (quoting Gall, 552 U.S. at 51). Applying "deferential" review, we must determine "whether the sentence imposed by the district court fails to achieve the purposes of

---

[1]    The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

sentencing as stated in section 3553(a)." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). "[W]e will not second guess the weight (or lack thereof) that the [court] accorded to a given factor ... as long as the sentence ultimately imposed is reasonable in light of all the circumstances presented." United States v. Snipes, 611 F.3d 855, 872 (11th Cir. 2010) (quotation, alteration and emphasis omitted), cert. denied, 131 S. Ct. 2962 (2011). We will not reweigh the relevant § 3553(a) factors, and will not remand for resentencing unless the district court committed a clear error of judgment in weighing the § 3553(a) factors by imposing a sentence outside the range of reasonable sentences. United States v. Langston, 590 F.3d 1226, 1237 (11th Cir. 2009). The party challenging the sentence bears the burden to show it is unreasonable. United States v. Tome, 611 F.3d 1371, 1378 (11th Cir. 2010). While we do not automatically presume a sentence falling within the guideline range to be reasonable, we ordinarily expect that sentence to be reasonable. Talley, 431 F.3d at 788. A sentence imposed well below the statutory maximum penalty is another indicator of reasonableness. United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008).

Here, Son's 200-month total sentence is reasonable. First, his procedural reasonableness claim rests on his challenges to the aggravating-role enhancement and drug-quantity calculation, both of which are unavailing, as we've discussed above. Son also has failed to demonstrate that his 200-month total sentence is

9

substantively unreasonable.  As the record shows, the district court considered the § 3553(a) factors when it varied downward 35 months below the applicable guideline range, noting Son's recidivism and the need for deterrence on the one hand, and mitigating evidence of his personal characteristics on the other hand. Further, his sentence is well below the statutory maximum penalty of life imprisonment, another indication that it is reasonable.  Gonzalez, 550 F.3d at 1324.

As for Son's claim of unwarranted disparities between his sentence and the sentences of his co-conspirators, we are unpersuaded.  A sentencing disparity is not "unwarranted" if the individuals being compared are not similarly situated.  See United States v. Spoerke, 568 F.3d 1236, 1252 (11th Cir. 2009) (explaining that a defendant is not similarly situated to an unprosecuted codefendant); United States v. Williams, 526 F.3d 1312, 1323 (11th Cir. 2008) (holding that two codefendants who pleaded guilty to the same offense were not similarly situated because one's sentence reflected the substantial assistance he provided to the government by testifying against the other).  In this case, Son has not shown that he is similarly situated to any of the individuals he lists -- for instance, several of the co-conspirators assisted the government in its investigation, another was never prosecuted, and Son failed to provide evidence of two others' criminal records.

Finally, we find unavailing Son's claim that the district court's drug quantity finding violated his Sixth Amendment rights under Apprendi.  In Apprendi, the

10

Supreme Court held that a fact, other than a prior conviction, that increases maximum penalty for a crime is an element of the crime that must be submitted to a jury.  530 U.S. at 490-91.  In Alleyne v. United States, 133 S. Ct. 2151 (2013), the Supreme Court extended Apprendi's holding to facts that increase the mandatory minimum prescribed by a statute, while recognizing that such facts are distinct from fact-finding that guides judicial discretion in selecting a punishment within limits fixed by law.    Alleyne, 133 S. Ct. at 2161 n.2.    Accordingly, a district court may enhance a sentence based upon judicial fact-finding so long as its findings do not increase the statutory maximum or minimum authorized by facts determined in a guilty plea or jury verdict.  Dean, 487 F.3d at 854.

Here, Son's claim fails under Apprendi and Alleyne because the statutory maximum penalty -- life imprisonment -- and the ten-year minimum on Counts One and Two were triggered when he pleaded guilty.  Thus, the district court did not err by relying on the additional drug quantity in order to impose a sentence within the predetermined statutory parameters.

**AFFIRMED.**

11